UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATANYA PRYOR, individually, and as
personal representative of QUANTRELL
PRYOR,

                 CIVIL CASE NO. 05-40184
        Plaintiff,

v.                HONORABLE PAUL V. GADOLA
                 U.S. DISTRICT COURT
DEARBORN POLICE DEPARTMENT, et al.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   Plaintiff LaTanya Pryor ("Plaintiff") filed suit against Defendants Dearborn Police Department and Officer Kulikowski, Officer Sanchez, Officer McHale, Officer Wenzara, Corporal Hoffman, Sergeant Tobias, and Sergeant Carriveau of the Dearborn Police Department. Plaintiff alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiff is the mother of the decedent Quantrell Pryor ("Quantrell"), a pretrial detainee. Plaintiff is also the personal representative of Quantrell's estate. Plaintiff alleges that the Defendant police officers acted with deliberate indifference by failing to provide her son Quantrell with adequate medical care while he was in police custody, which ultimately resulted in his untimely death.

   Before this Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), for failure to show a genuine issue as to any material fact. For the reasons set out below, the Court will grant the motion with respect to the Dearborn Police Department but will deny the motion with respect to the individual police officers.

Also before the Court is Plaintiff's motion to strike the motion for summary judgment. The Court will deny Plaintiff's motion to strike as moot.

**I.   Background**

The following facts are not in dispute. On October 12, 2004, sixteen-year-old Quantrell Pryor was arrested outside of the Fairlane mall by Defendant Officer Kulikowski for possession of a stolen vehicle. Defendant Officer Sanchez arrived as backup to assist Kulikowski. Upon being arrested, Quantrell was placed in the back of a police vehicle. While in custody in the police vehicle, Quantrell consumed an unknown quantity of cocaine. A family acquaintance of Quantrell, Jacqueline Melvin, noticed Quantrell in the back of the police car and called Quantrell's mother, Plaintiff LaTanya Pryor. Plaintiff then spoke to Kulikowski on the phone. Quantrell was later transported by Kulikowski and Sanchez to the Dearborn Police station where Quantrell again ingested crack cocaine. Defendants McHale and Wenzara assisted in transporting Quantrell from the police garage to the station. Defendants Tobias, Hoffman, and Carriveau each observed and had some contact with Quantrell. Shortly after his arrival at the station, Quantrell collapsed on the floor of his cell and began convulsing. The paramedics were eventually called, and they transported Quantrell to Oakwood Hospital where he died three days later.

The specific details of Quantrell's arrest, escort, and custody differ significantly in Plaintiff's and Defendants' accounts. Plaintiff alleges that, while at the scene of the arrest, Defendants Kulikowski and Sanchez knew Quantrell ingested cocaine, but ignored Quantrell's condition and failed to give him proper medical attention. In support, Plaintiff notes Kulikowski's and Sanchez's testimony that they observed a yellowish-white substance on or around Quantrell's mouth and observed him chewing. Subsequently, to prevent Quantrell from swallowing, the officers allegedly

applied pressure points to Quantrell's throat, ear, and jaw. Additionally, the officers allegedly made statements that Quantrell had eaten "a ton" of crack cocaine and that Quantrell was "straight up tripping" and "that's what happens when you eat . . . try to eat crack." Jacqueline Melvin allegedly witnessed Quantrell acting "like a crazy man, not like his-self [sic]; eyes all bugged out, totally different." After Melvin called Quantrell's mother, Plaintiff Pryor, Plaintiff spoke to Kulikowski and requested that Quantrell receive immediate medical attention. In Plaintiff's deposition, Plaintiff states that Kulikowski conceded Quantrell needed medical attention after swallowing the cocaine and vomiting, but that he did not care and instead wanted to know if Plaintiff had any information about the stolen vehicle. Plaintiff claims Kulikowski and Sanchez laughed, joked, and made fun of Quantrell instead of summoning medical attention or taking Quantrell directly to the hospital.

  Upon arrival at the Dearborn police station, Plaintiff contends Kulikowski tried to conceal the amount of cocaine Quantrell ingested by giving conflicting information to fellow Defendant officers and supervisors. Defendant McHale allegedly observed a white substance on Quantrell and found multiple rocks of crack cocaine lying in the back seat of the patrol car used to transport Quantrell, and yet took no action to get medical attention for Quantrell. Defendant Wenzara also allegedly knew that Quantrell had ingested crack cocaine, and observed Quantrell convulsing naked on the floor of the holding cell. Plaintiff claims Wenzara did nothing to help Quantrell when he was convulsing but instead watched Quantrell bang his head on cement benches until the paramedics arrived. Plaintiff alleges that Defendant Hoffman was advised by Kulikowski that Quantrell ingested a controlled substance, but that Hoffman did not seek medical attention for Quantrell. Plaintiff claims Defendant Tobais, the Sergeant officer on duty, was told by Kulikowski that Quantrell ingested only "a small amount of possible crack cocaine" but that Tobias knew or should

have known that Quantrell ingested a greater amount, and yet he did nothing to get medical help for Quantrell. Defendant Carriveau, the desk Sergeant and former narcotics officers, also allegedly knew that Quantrell had eaten crack cocaine, but demanded that Quantrell admit this before he was provided with medical attention. Plaintiff claims Carriveau observed Quantrell convulsing and banging his head on the cement floor, and yet did not get Quantrell medical attention. Instead, Carriveau allegedly kicked Quantrell to monitor him during the convulsions.

Defendants Kulikowski, Sanchez, McHale, Wenzara, Hoffman, Tobias, and Carriveau have a different account of what occurred on October 12, 2004. Kulikowski and Sanchez claim that when they arrested Quantrell, there was no need of medical attention because Quantrell showed no symptoms of drug overdose and Quantrell's cognitive ability was not impaired. To support this position, Kulikowski and Sanchez allege that Quantrell was able to recognize Jacqueline Melvin who he had not seen for over seven years. Furthermore, Kulikowski and Sanchez allege that Quantrell only banged his head on the side passenger window of the patrol car to get Ms. Melvin's attention. Additionally, Kulikowski and Sanchez contend that Quantrell was not mentally impaired because he was able to make obscene comments to Sanchez. Kulikowski claims that, based on his observations and search of Quantrell during the arrest, he believed that Quantrell did not ingest a large amount of cocaine. Kulikowski allegedly told Sanchez about the finding of his search, and they both agreed that Quantrell ingested, at most, a small amount of cocaine.

Upon arrival at the police station, Kulikowski and Sanchez admit that Kulikowski again discovered Quantrell attempting to eat crack cocaine. Defendants Wenzara and McHale observed Kulikowski struggling to bring Quantrell into the station and offered assistance. Defendants admit that they threatened Quantrell with the use of a taser but they claim they only used it because

Quantrell was greatly struggling, and that after the taser threat, Quantrell calmed down. Defendants allege that Quantrell was taken to a glass holding cell where Defendant Carriveau, an experienced narcotics officers, spoke with Quantrell and offered him medical assistance on two occasions. On each occasion, Quantrell allegedly denied having eaten any cocaine and refused medical assistance. Carriveau allegedly observed Quantrell, but found no evidence of intoxication. When Quantrell collapsed on the floor and began convulsing, Defendants immediately called the paramedics who transported Quantrell to Oakwood Hospital, where he later died.

On June 8, 2005, Plaintiff, LaTanya Pryor, filed a complaint in her individual capacity and as the personal representative of the estate of Quantrell Pryor, deceased, against the Dearborn Police Department and against police officers Kulikowski, Sanchez, McHale, Wenzara, Hoffman, Tobias, and Carriveau, each in their individual and official capacities. In her complaint, Plaintiff alleges, pursuant to 42 U.S.C. §1983, that Defendants unreasonably exposed Quantrell to risk of harm contrary to the Fourth and Fourteenth Amendments to the United States Constitution, prohibiting deprivation of one's right to life without due process of law.

**II.     Motion for Summary Judgment**

In their motion for summary judgment, Defendants seek dismissal of the case against all Defendants. In Plaintiff's response, Plaintiff concedes that dismissal of all claims against the Dearborn Police Department is appropriate. Thus, the Court will dismiss the Dearborn Police Department from the case. Only the claims against the individual officers remain for consideration.

**A.     Legal Standard**

Defendants filed a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as to a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**B.   Analysis**

Plaintiff claims that all Defendant officers were deliberately indifferent to Quantrell's medical needs in violation of § 1983 because Defendants knew that Quantrell was suffering from a cocaine overdose and yet failed to provide him with adequate medical attention. Defendant officers seek summary judgment with respect to these alleged § 1983 violations, arguing that they

were not deliberately indifferent to the medical needs of Quantrell, and consequently, that they are not liable for the Quantrell's death under § 1983 for failure to provide medical treatment. In the alternative, Defendants argue that even if this Court were to find deliberate indifference, Defendants are nonetheless protected by the doctrine of qualified immunity.

### 1. Whether Defendant Officers Failed to Provide Adequate Medical Care by Acting with Deliberate Indifference

Sustaining a cause of action for failure to provide medical care under 42 U.S.C § 1983 requires that Plaintiff prove that "the defendants acted with 'deliberate indifference to the serious medical needs' " of a pretrial detainee. *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In analyzing a claim of deliberate indifference, the Sixth Circuit Court of Appeals employs a two-part analysis consisting of an objective prong and a subjective prong. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). Satisfaction of the objective prong requires that Plaintiff show that the pre-trial detainee had "the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). For the subjective prong, Plaintiff must demonstrate that Defendants possessed "a sufficiently culpable state of mind in denying medical care." *Id.* at 312 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). The Court will first apply the Sixth Circuit's two-part analysis to Officers Kulikowski and Sanchez and then apply the analysis to the remaining police officers.

#### a. Defendants Kulikowski and Sanchez

The Court will first consider the first prong of the two-part deliberate indifference analysis with respect to Defendants Kulikowski and Sanchez. To satisfy the objective prong, Quantrell's medical need must be sufficiently serious. The Sixth Circuit has stated:

8

> Where a plaintiff's claims arise from an injury or illness so obvious that even a lay person would easily recognize the necessity for a doctor's attention, . . . it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

*Id.* at 311-12 (quoting *Blackmore*, 390 F.3d at 899-900).

Taking the facts in the light most favorable to Plaintiff, the obvious severity of Quantrell's condition satisfies the objective prong because it would be obvious to a layperson that Quantrell was suffering from a drug overdose and that he need medical help. There are facts that support Plaintiff's contention that Quantrell ingested a significant quantity of cocaine before and during his time in police custody and was suffering the effects of drug overdose. Sanchez observed Quantrell's behavior at the scene of the arrest and commented that Quantrell was "straight up tripping" and "that's what happens when you eat . . . try to eat crack." Additionally, Melvin testified that Quantrell was acting "like a crazy man, not like his-self [sic]; eyes all bugged out, totally different." The effects of Quantrell's overdose worsened into convulsions at the police station and ultimately culminated in his death. Plaintiff's version of the facts indicate that Kulikowski and Sanchez were aware that Quantrell had ingested cocaine and that he was suffering from its effects. Taking the facts in the light most favorable to Plaintiff, Quantrell's condition was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* Thus, Plaintiff has demonstrated that Quantrell's medical need was sufficiently serious, satisfying the first prong of the analysis.

The Court will now consider the second prong of the two-part deliberate indifference analysis with respect to Defendants Kulikowski and Sanchez. Here, taking all the facts in the light most favorable to Plaintiff, there is sufficient evidence to satisfy the second subjective prong. Satisfaction of the subjective prong requires Plaintiff to demonstrate that Defendants possessed "a

9

sufficiently culpable state of mind in denying medical care." *Id.* at 311 (quoting *Brown*, 207 F.3d at 867). A defendant possess a sufficiently culpable state of mind when he acts with deliberate indifference, which requires that a defendant be more than negligent. *Id* at 312.

> Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the detainee's] health and safety. . . . It is not enough that there was a danger of which an officer should objectively have been aware. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* (quoting *Watkins*, 273 F.3d at 686).

Kulikowski and Sanchez were the two officers present when Quantrell was first arrested. Taking the facts in the light most favorable to Plaintiff, the officers knew Quantrell had eaten cocaine and observed Quantrell's symptoms of drug overdose, and yet failed to provide adequate medical care in response. Sanchez comments about Quantrell's condition at the scene of the arrest demonstrate that Sanchez knew about Quantrell's ingestion of cocaine. Furthermore, Plaintiff testified that she talked to Kulikowski on the phone, that he told her that Quantrell had ingested cocaine, that Plaintiff then demanded that Kulikowski seek medical attention for her son Quantrell, and that Kulikowski refused to do so. Additionally, Kulikowski allegedly attempted to conceal the true amount of cocaine Quantrell ingested by giving conflicting information to fellow Defendant officers and supervisors. Finally, though Kulikowski and Sanchez knew that Quantrell had ingested cocaine and was suffering from the effects of drug overdose, they did not provide Quantrell with timely medical attention. Therefore, when taking the facts in a light most favorable to Plaintiff, there is sufficient evidence to establish that Kulikowski and Sanchez were aware of Quantrell's serious condition and yet disregarded the risk of substantial harm to Quantrell by failing to provide adequate medical attention, satisfying the second subjective prong of the analysis. Consequently,

there is a genuine issue of material fact as to whether Defendants Kulikowski and Sanchez acted with deliberate indifference.

### b. Defendants Carriveau, Wenzara, McHale, Tobias, and Hoffman

The Court will now examine the Sixth Circuit's two-part test to establish deliberate indifference for failure to provide medical care with respect to the remaining Defendants Carriveau, Wenzara, McHale, Tobias, and Hoffman. Here, taking the facts in the light most favorable to Plaintiff, Plaintiff has satisfied the first objective prong of the deliberate indifference analysis. Quantrell's drug overdose because of cocaine ingestion is a sufficiently serious medical need to satisfy the first prong, as discussed above.

Plaintiff has also satisfied the second subjective prong of the analysis. Satisfaction of the subjective prong requires that Plaintiff demonstrate that Defendants possessed "a sufficiently culpable state of mind in denying medical care." *Id.* at 311 (quoting *Brown*, 207 F.3d at 867). A defendant possess a sufficiently culpable state of mind when he acts with deliberate indifference, by knowing of, yet disregarding, a substantial risk of serious harm. *See id.* at 312. Taking the facts in a light most favorable to Plaintiff, there is sufficient evidence that the remaining officers were fully aware of the severity of Quantrell's condition and the risk to his health while he was in custody at the police station, and that they failed to provide adequate medical care in response. Tobias, the officer on desk duty when Quantrell arrived at the station, knew of Quantrell's condition and that Quantrell had ingested cocaine. McHale observed a white substance on Quantrell's mouth and found multiple rocks of crack cocaine lying in the back seat of the patrol car used to transport Quantrell. Hoffman knew that Quantrell had ingested cocaine and placed an unarmed taser on Quantrell's shoulder to control Quantrell's behavior. Tobias, McHale, and Hoffman all neglected

to provide Quantrell with medical assistance even though they were aware of Quantrell's serious condition. Carriveau knew of Quantrell's condition, but demanded that Quantrell admit that he swallowed cocaine before he was provided with medical attention. Furthermore, Carriveau and Wenzara observed Quantrell convulsing and banging his head on cement benches, yet failed to seek adequate medical assistance. Though the paramedics were eventually called, there is a genuine issue of material fact as to whether Defendants acted quickly enough in calling the paramedics.

In response, Defendants argue that at the police station, Quantrell appeared to be coherent and acting normal, and thus, there was no need for medical attention. According to Defendants, when Quantrell arrived at the police station he was struggling with the officers, but responded to the threat of Hoffman's taser by calming down. Moreover, Defendants argue that Quantrell was closely monitored by the officers. Defendant Carriveau, an experienced former narcotics officer, observed Quantrell in the holding cell and maintained that he was not in a drug induced state. Defendants claim Quantrell was offered medical assistance by Defendant Carriveau, but that Quantrell denied ingesting cocaine and refused medical care on two occasions. This case, therefore, has testimonial evidence on both sides in support of conflicting accounts of what happened on October 12, 2004. If Defendants' account is true, then the officers may not have acted with deliberate indifference to Quantrell's medical needs. At the summary judgment stage, however, this Court must take the facts in the light most favorable to the nonmoving party, Plaintiff. With that standard, a reasonable juror could find that Defendants Carriveau, Wenzara, McHale, Tobias, and Hoffman knowingly disregarded Quantrell's serious medical condition of suffering from a drug overdose and unreasonably delayed in getting medical attention. Thus, a genuine issue of material fact exists as to whether Defendants acted with deliberate indifference.

**B.      Whether Defendants Are Protected Because of Qualified Immunity**

In the alternative, Defendants argue that even if this Court were to find deliberate indifference, Defendants are nonetheless protected by the affirmative defense of qualified immunity. Qualified immunity is an affirmative defense that shields public officers from liability under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). The Sixth Circuit has adopted the Supreme Court's holding in *Saucier v. Katz*, 533 U.S. 194 (2001), that a ruling upon a governmental actor's assertion of qualified immunity involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter*, 408 F.3d at 310-11 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The initial inquiry is whether the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. In the current case, the constitutional right allegedly violated is the right of a pre-trial detainee to receive adequate medical treatment. The Sixth Circuit recognizes that "[p]re-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment." *Estate of Carter*, 408 F.3d at 311. A cause of action for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference. This Court, in the previous section above, has conducted the relevant analysis, and finds that, when taking the facts in the light most favorable to Plaintiff, Defendant officers were deliberately indifferent to the serious medical needs of Quantrell Pryor and failed to provide adequate medical treatment. Consequently, Defendants' conduct is in violation of Quantrell's constitutional right to receive adequate medical attention, and Plaintiff has satisfied the first step of the qualified immunity analysis.

The second step is whether the right to adequate medical attention was clearly established

at the time of Defendants' violation. The Sixth Circuit has made clear that this right has long been established:

> As early as 1972, this court stated that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Furthermore, in 1992, this court explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987. *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir. 1992).

*Estate of Carter*, 408 F.3d at 313. Thus, the right that Defendants violated was clearly established. When considering the facts in the light most favorable to Plaintiff, there is a violation of a clearly established constitutional right, and Defendants are not entitled to qualified immunity.

### III.    Motion to Strike

Also before the Court is Plaintiff's motion to strike. In the motion, Plaintiff requests that the Court strike Paragraph 14 of Defendant Kulikowski's affidavit attached to Defendants' motion for summary judgment. Plaintiff argues that the affidavit contradicts Kulikowski's earlier deposition testimony. Because this Court is ruling in Plaintiff's favor by denying Defendants' motion for summary judgment, the Court denies Plaintiff's motion as moot.

### IV.    Conclusion

For the reasons stated above, the Court finds that Defendant police officers are not entitled to summary judgment on either the issue of deliberate indifference or on the issue of qualified immunity.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 18] is **GRANTED IN PART and DENIED IN PART**. With respect to Defendant Dearborn Police Department, Defendants' motion for summary judgment is **GRANTED**

and the Dearborn Police Department is **DISMISSED** from this action. With respect to all remaining Defendants, Defendants' motion for summary judgment is **DENIED**.

    **IT IS FURTHER ORDERED** that Plaintiff's motion to strike [docket entry 23] is **DENIED AS MOOT**.

    **SO ORDERED.**


Dated:   September 14, 2006                    s/Paul V. Gadola
                                            HONORABLE PAUL V. GADOLA
                                            UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   September 15, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
    James M. Pidgeon; Arnold E. Reed    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.

                                            s/Ruth A. Brissaud
                                            Ruth A. Brissaud, Case Manager
                                            (810) 341-7845